264 N.J. Super. 549 (1993)
625 A.2d 34
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
TODD M. TUCKER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 30, 1993.
Decided May 24, 1993.
*551 Before Judges ANTELL, SKILLMAN and VILLANUEVA.
Zulima V. Farber, Public Defender, attorney for appellant (Michele A. Adubato, Designated Counsel, of counsel and on the brief).
Todd M. Tucker, appellant, submitted a pro se supplemental brief.
Nicholas L. Bissell, Jr., Somerset County Prosecutor, attorney for respondent (Gilbert G. Miller, Assistant Prosecutor, of counsel; Michael J. Pasnik, on the brief).
The opinion of the court was delivered by VILLANUEVA, J.S.C. (temporarily assigned).
Defendant appeals from his convictions for burglary, N.J.S.A. 2C:18-2, and theft, N.J.S.A. 2C:20-3. We reverse.
Mark Thomas was in the basement of his home when he heard a noise upstairs. Upon investigation he saw someone at the top of the stairwell to the basement. Upon discovery, the intruder fled from the house with Thomas in pursuit. The intruder ran down the driveway, threw a small box over his shoulder, and pedalled away on a bicycle that had been lying by the side of the road.
Thomas picked up the box and discovered it was his mother's jewelry box which had contained over $900 of jewelry. The contents of the box were spread all over the driveway. Thomas called the Watchung Police Department and described the intruder as a 5' 10" "chunky" black male, weighing approximately 190 pounds, wearing white pants, a blue jacket and white sneakers. He also told the police that the intruder was riding a blue bicycle. Thomas never saw the intruder's face.
A police officer was on patrol when he received the report of the burglary. He was given the description of the intruder provided earlier by Thomas. The officer saw an individual fitting the aforesaid description, followed him and stopped the suspect, who was later identified as defendant. The suspect was wearing white *552 sweatpants, white sneakers and a blue denim jacket, and was riding a blue racing bike. Thomas was driven to the scene, and though unable to identify the defendant's face, stated to police that defendant was the correct height and weight and was wearing the same clothes as the intruder.
Following his arrest, the defendant was taken to the Watchung Police Department. He was advised of his Miranda[1] rights, asserted his right to remain silent, and requested an attorney. Defendant's sneakers were removed so that a comparison could be made to a sample taken of a footprint found outside the Thomas house. When the police would not answer defendant's question as to why he had been arrested, the defendant waived his rights in the presence of Detective Sean Whelan. Detective Whelan readvised defendant of his Miranda rights prior to accepting defendant's waiver.
In response to the detective's remark that the sneakers were taken to match with a footprint found at the scene, defendant stated "how [are you] going to find footprints in gravel." Though flustered by his apparent slip, the defendant maintained his innocence.
Tests performed by the New Jersey State Police Lab regarding defendant's sneakers were non-conclusive. Though it was determined that defendant's sneakers were of the same manufacturer's design as those leaving prints at the scene, it could not be determined whether the footprints were made by defendant's sneakers. The Somerset County Sheriff's Office was able to recover fingerprints of defendant's left and right thumbs from a window pane of glass found leaning up against the Thomas house.
The jury convicted defendant of burglary and theft. The State's motion for an extended term was granted, and defendant was sentenced to a ten-year custodial term with a five-year period of parole ineligibility for the burglary and a concurrent six-month *553 custodial term for the theft. The court also imposed an aggregate sixty dollar V.C.C.B. penalty.
Defendant makes the following arguments on appeal:
POINT I THE DEFENDANT'S MOTION FOR RECUSAL SHOULD HAVE BEEN GRANTED.
POINT II THE CUSTODIAL STATEMENTS MADE BY THE DEFENDANT FOLLOWING HIS ARREST SHOULD NOT HAVE BEEN ADMITTED INTO EVIDENCE.
POINT III IT WAS ERROR FOR THE COURT TO FAIL TO EXCLUDE DETECTIVE JANSEN AS AN EXPERT AT TRIAL.
POINT IV THE FAILURE OF THE COURT TO CONDUCT A WADE HEARING WAS ERRONEOUS.
POINT V THE DEFENDANT'S PRIOR CONVICTIONS SHOULD NOT HAVE BEEN ADMITTED INTO EVIDENCE.
POINT VI CERTAIN STATEMENTS MADE BY THE PROSECUTOR IN SUMMATION WERE IMPROPER AND DEPRIVED THE DEFENDANT OF A FAIR TRIAL. (Not Raised Below).
POINT VII THE SENTENCE IMPOSED UPON THE DEFENDANT WAS EXCESSIVE AND SHOULD BE REDUCED. (Not Raised Below).

I.
At the Sands[2] hearing prior to trial, defense counsel informed the judge that in 1987 the judge, while still an assistant prosecutor with the Somerset County Prosecutor's Office, presented two cases which involved the defendant before the grand jury. Even though the judge denied having any personal recollection of the defendant, defense counsel made an oral motion to have the judge recuse himself. After looking at the indictments, the judge said that,
it appears that when I was in the office, this apparently was my file, and I, at least, put the case through Grand Jury. I'm not certain that I processed the case after that point or not, but at least it was presented to the Grand Jury by me, because my initials were on the back of the indictment.
But it would also appear, from the nature of the sentence and that this was the result of a plea agreement, at some time.
Later, after looking at the initials on the indictment, the judge said:

*554 I probably presented the case before the Grand Jury. I may have done that because it was my case, I may have been putting a case through for another Assistant Prosecutor at that time. It may not even have been my case, and I merely presented it.
But it's also obvious from the papers that this case resulted in a plea of guilty by the Defendant, pursuant to the plea agreement.
R. 1:12-1 states:
The judge of any court shall disqualify himself on his own motion and shall not sit in any matter ... (f) when there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so.
The situations in which a judge should grant a motion for recusal are varied and are not limited arbitrarily to cases of kinship, personal interest in the litigation or prior representation of a party. There are areas beyond these where a judge may not sit in judgment. There must be an appearance of impartiality which fosters the confidence of litigants in the justice system. Any questions concerning that impartiality threatens the integrity of our judicial process.
Canon 3(C)(1) of the Code of Judicial Conduct states in relevant part:
A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.
A trial judge "not only has the right but, moreover, has the obligation to recuse himself on his own motion if he is satisfied that there is good cause for believing that his not doing so `might preclude a fair and unbiased hearing and judgment, or ... might reasonably lead counsel or the parties to believe so.'" State v. Utsch, 184 N.J. Super. 575, 581, 446 A.2d 1236 (App.Div. 1982) (quoting R. 1:12-1(f)); see also James v. State, 56 N.J. Super. 213, 217, 152 A.2d 386 (App.Div. 1959). We have noted that "[n]ext in importance to the duty of rendering a righteous judgment is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge." State v. Muraski, 6 N.J. Super. 36, 38, 69 A.2d 745 (App.Div. 1949), quoting 30 Am.Jur., Judges, ¶ 53.
*555 In United States v. Nobel, 696 F.2d 231 (3rd Cir.1982), cert. denied, 462 U.S. 1118, 103 S.Ct. 3086, 77 L.Ed.2d 1348 (1983), the Third Circuit Court of Appeals stated:
[O]ne of the principal functions of a judicial disqualification statute is to maintain public confidence in the integrity of the judicial process, which in turn depends on a belief in the impersonality of judicial decision making.
[Id. at 235.]
In State v. McNamara, 212 N.J. Super. 102, 514 A.2d 63 (App.Div. 1986), certif. denied, 108 N.J. 210, 528 A.2d 30 (1987), we quoted an administrative directive of the Supreme Court, which states:
A judge should disqualify himself from hearing a criminal matter involving a defendant who the judge, in his previous capacity, had personally prosecuted or defended, or had represented in a civil matter in the past.
[Id., 212 N.J. Super. at 108, 514 A.2d 63.]
"[T]he directive in question, embodying guidelines promulgated by the Supreme Court concerning judicial disqualifications in criminal cases, has the full force and effect of law." Id. at 109, 514 A.2d 63. While an assistant prosecutor who presents a case to a grand jury does not have the same degree of involvement with the defendant as one who actually tries a case, he is involved in "personally prosecuting" the defendant and thus would be included under this directive. The trial judge also indicated that he may have had personal responsibility for the prior prosecutions of the defendant, which meant that he may have participated in the plea bargaining process. We conclude that such involvement has the capacity to undermine public confidence in the impartiality of the judicial system.
We find under the circumstances of this case that the defendant's motion for recusal should have been granted. Therefore, the convictions must be reversed. Jenkins v. State, 570 So.2d 1191, 1193 (Miss. 1990); Calvert v. State, 498 N.E.2d 105, 107 (Ind. App. 4 Dist. 1986); People v. Smith, 120 A.D.2d 753, 503 N.Y.S.2d 72 (Supreme Court, App.Div.2d Dept., 1986); People v. Corelli, 41 A.D.2d 939, 343 N.Y.S.2d 555 (Supreme Court, App. Div.2d Dept. 1973); see also 16 A.L.R. 4th 550 Annotation: Disqualification of Judge  Criminal Cases.
*556 In light of our determination, we do not address defendant's remaining contentions.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] State v. Sands, 76 N.J. 127, 386 A.2d 378 (1978).